UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-21828-KMM

SYNCHRONY BANK,

    Plaintiff,

v.

CABINETS TO GO, LLC,

    Defendant.

_____/

**REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon Plaintiff Synchrony Bank's Motion Pursuant to Federal Rule of Civil Procedure 60(a) to Calculate Amount of Prejudgment Interest Award (ECF No. 197). Defendant Cabinets To Go, LLC filed a Response (ECF No. 198), to which Plaintiff filed a Reply (ECF No. 200). This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, to take all necessary and proper action as required by law with respect to Plaintiff's Motion. (ECF No. 199). Having reviewed the Motion, Response, Reply, and being otherwise fully advised on the matter, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED, in part**, and **DENIED, in part**.

**I.**    **BACKGROUND**

Plaintiff is a federally-charted savings association and Defendant is a Florida limited liability company. The Parties entered into a retailer program agreement (the "Agreement"), within which Plaintiff agreed to provide its open-end credit program to qualified customers of

1

Defendant. Plaintiff claimed that Defendant agreed not to offer its customers a competing credit program during the term of the Agreement. Plaintiff alleged that Defendant further agreed to promote, accept, and process customer applications for credit cards, honor those cards as a method of payment, and display signage relating to the credit program. Plaintiff alleged that it performed under the terms of the Agreement, however, Defendant stopped promoting the program and ceased honoring credit cards, instead offering and promoting a competing credit program. In its Complaint, Plaintiff alleged that it suffered damages due to lost profits and asserted a single claim for breach of contract against Defendant.

Plaintiff moved for summary judgment on its claim with respect to liability, only. In its Motion for Summary Judgment, Plaintiff stated that the calculation of its damages and entitlement to attorney's fees "will be addressed at trial and/or by way of further motion practice." (ECF No. 51 at 1 & n.1). The Court granted Plaintiff's Motion for Summary Judgment finding that Plaintiff performed its contractual obligations, but Defendant breached the Agreement by "offering credit options . . . to its customers on January 12, 2021" to a new provider, Wells Fargo. (ECF No. 91 at 17). The Court held that "no reasonable fact-finder could find that Defendant did not breach the Agreement," (*id.* at 18), and the calculation of Plaintiff's damages and the Parties' claims to attorney's fees and costs were the only issues for trial. A bench trial was held on October 24 and 25, 2022. (ECF Nos. 143, 147).

In its Findings of Fact and Conclusions of Law, the Court found Plaintiff's net loss as a result of Defendant's breach was $6,814,833.00. (ECF No. 172 at 18). This calculation was comprised of Plaintiff's lost profits of $6,764,833.00, and the loss of $50,000.00, the promised "Unamortized Second Amendment Extension Bonus," contained in Section 1.7 of the Second Amendment to the Agreement. (*Id.* at 16). Plaintiff's lost profits were calculated by subtracting

the costs that Plaintiff would have incurred from the revenue it would have earned from its contractual relationship with Defendant. (*Id.* at 4). In determining Plaintiff's lost profits, the Court credited Plaintiff's witnesses', Kari Pfarrer ("Pfarrer") and Andrew Kaplan ("Kaplan"), estimations and calculations. Ultimately, the Court found Plaintiff was entitled to $6,764,833.00, plus the $50,000.00 bonus, and less $679,448.89 in funds Plaintiff had retained, resulting in an award of $6,135,384.11 in damages. The Court further held that Plaintiff shall "recover prejudgment interest at the statutory rate pursuant to Utah Code Ann. § 15-1-1 (West)." (*Id.* at 19).

Plaintiff now moves for a determination of the amount of prejudgment interest to which Plaintiff is entitled.

**II.   DISCUSSION**

The Parties do not dispute that Plaintiff is entitled to prejudgment interest; rather, they dispute the amount Plaintiff is entitled to. The Parties agree that Plaintiff is entitled to prejudgment interest on the loss of $50,000.00 Unamortized Second Amendment Extension Bonus contained in Section 1.7 of the Second Amendment to the Agreement. Defendant calculates the interest on the $50,000.00 amount to equal $15,149.86, a calculation Plaintiff does not contest. Plaintiff asserts, however, that it is entitled to prejudgment interest on the total award of $6,135,384.11, inclusive of Plaintiff's lost profits from the date of Defendant's breach through the date of judgment,[1] totaling $1,859,004.39.

Defendant argues that Plaintiff is not entitled to prejudgment interest on the Court's damages award of $6,085,384.11 in lost profits because non-fixed damages are not subject to prejudgment interest under Utah law. Defendant asserts that because Plaintiff's lost profits were not easily measured by facts and figures, but rather were a result of its witnesses' estimations,

---

[1] The Parties do not dispute that the relevant time period for calculating prejudgment interest is from January 12, 2021 through January 22, 2024.

3

Plaintiff is only entitled to prejudgment interest on the fixed $50,000.00 return of the Agreement's advance.

Plaintiff first argues that Defendant failed to bring its challenge to Plaintiff's entitlement to prejudgment interest in the proper procedural vehicle. Plaintiff argues that, for Defendant to challenge Plaintiff's entitlement to prejudgment interest, Defendant should have filed a motion to alter the judgment under Federal Rule of Civil Procedure 59(e) or a motion to correct a mistake in the final judgment under Federal Rule of Civil Procedure 60(b)(1). But because the time to do so has passed, Plaintiff asserts that Defendant's objection to Plaintiff's entitlement to prejudgment interest is untimely.

Plaintiff's argument assumes incorrectly that the District Court has already determined that Plaintiff is entitled to prejudgment interest on the entirety of the award amount. The District Court's Findings of Fact and Conclusions of Law renders no such decision, but rather solely finds Plaintiff is entitled to prejudgment interest. The relevant portion reads,

> Therefore, Plaintiff shall recover damages . . . in the amount of $6,814,833.00, calculated by adding the $50,000 from the Unamortized Second Amendment Extension Bonus to the $6,764,833 in lost profits. The $679,448.89 that Plaintiff retained as a result of Defendant's breach of the Agreement shall be credited towards the damages reward, meaning, in total, Plaintiff is entitled to a sum of $6,135,384.11. Plaintiff shall also recover pre-judgment interest at the statutory rate pursuant to Utah Code Ann. § 15-1-1 (West). Plaintiff shall recover post-judgment interest at the federal post-judgment interest rate.

(ECF No. 172 at 18–19). Plaintiff's argument that the "parallel sentences" of the Order signify it is entitled to prejudgment interest on the full award is unpersuasive. Rather, the Order simply determines Plaintiff's entitlement to pre- and post-judgment interest, a matter properly before the Court on the present Motion.

Plaintiff's argument additionally misconstrues Defendant's argument. Defendant does not dispute that Plaintiff is entitled to prejudgment interest, but rather disputes how much prejudgment

4

interest to which Plaintiff is entitled. Defendant's challenge is timely filed in response to Plaintiff's instant Motion to correct clerical mistakes, oversights, and omissions under Federal Rule of Civil Procedure 60(a) found in the judgment. Thus, the Court will consider Defendant's argument that Plaintiff is not entitled to prejudgment interest on the award of Plaintiff's lost profits under Utah law.

Plaintiff counters that, under Utah law, Plaintiff is entitled to prejudgment interest on the award of its lost profits because the calculation of its lost profits was specific, readily verifiable, and based on real historical data of the Parties' long-term business relationship.

"In diversity cases, the availability and amount of prejudgment interest is ordinarily governed by state law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007); *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009). The Parties agree that Utah law governs the availability of prejudgment interest in this case. "As Utah does not have a prejudgment interest statute relevant to this dispute, we must look to the state's caselaw as our guide when addressing issues concerning prejudgment interest." *ClearOne Commc'ns, Inc. v. Chiang*, 432 F. App'x 770, 773 (10th Cir. 2011); *Iron Head Constr., Inc. v. Gurney*, 207 P.3d 1231, 1232 (Utah 2009) (noting that, in Utah, the availability of prejudgment interest is a question of law).

"'Prejudgment interest may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures.' Prejudgment interest is appropriate when 'the loss has been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.'" *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 272 (2009) (alterations omitted). "[T]he standard focuses on the measurability and calculability of the damages." *Id.*

5

In awarding damages based on Plaintiff's lost profits, the Court found Plaintiff's witness Pfarrer and expert Kaplan's estimations and calculations reliable. Plaintiff's lost profits were calculated by subtracting the costs that Plaintiff would have incurred from the revenue it would have earned from its contractual relationship with Defendant. Plaintiff's revenue is the sum of its (1) merchant discount fees; (2) finance charges; and (3) late fees that it would have earned based on the credit sales ("Purchase Volume")[2] that would have occurred under the Agreement. (ECF No. 172 at 4). The Court first found Pfarrer's estimation credible that the Purchase Volume for the remaining term of the Agreement was approximately $113,800,000.00. (*Id.* at 4, 6). Pfarrer testified that she calculated the Purchase Volume by assuming a 10% annual increase in credit sales from the 2020 Purchase Volume between the Parties. The District Court summarized Pfarrer's estimation as follows:

> Relying on historical data from the Parties relationship, Pfarrer identified that Defendant's sale volume in 2018 was approximately $24,000,000.00, growing to $33,000,000.00 in 2019, and then culminating in $38,900,000.00 in 2020. Though Defendant's actual growth in sale volume from 2018 to 2021 was 22%, Pfarrer relied on a conservative 10% growth rate estimate to calculate the volume of lost sales for the twenty-nine remaining months of the Agreement. Pfarrer concluded that, based on the 10% projected growth figure, Plaintiff lost $32,135,261.50 in 2021, $47,131,702.00 in 2022, and $34,563,248.28 in 2023, thus totaling $113.830,201.98 in lost Purchase Volume. The appropriateness of this projection is confirmed by Defendant's actual 2021 credit sales.

(*Id.* at 5) (citations omitted).

The Court found that Plaintiff's expert, Kaplan, proffered a credible calculation based on the Purchase Volume estimation for Plaintiff's merchant discount fees, revenue from finance charges, and revenue from late fees. (*Id.* at 7, 10, 11). The Court credited Kaplan's calculation of lost revenue, in totaling the respective amounts for the above with an additional subtraction to the

---

[2] Purchase Volume refers to the amount of credit sales that would have occurred on the remaining twenty-nine month term of the Agreement.

total revenue figure, that Plaintiff had a total loss in revenue in the amount of $11,820,029.00. (*Id.* at 11–12).

Plaintiff's costs consist of (1) cost of funds; (2) volume rebates; (3) credit losses; and (4) overhead expenses, for which the Court found Kaplan's calculations credible. (*Id.* at 12, 14, 15). Kaplan estimated that the aggregate cost to Plaintiff amounted to $4,662,644.00, which was then subtracted from the amount of expected revenue of $11,820,029.00; Plaintiff's total lost profits equated to $7,157,385.00. After calculating the total lost profits, Kaplan applied a 4.5% discount rate to determine the present value of the lost profits given that the calculations apply to future damages. (*Id.* at 16). Then, after this adjustment, Kaplan's lost profits calculation amounted to $6,764,833.00. (*Id.*). The Parties did not dispute that Defendant owed the additional $50,000.00 stemming from the Second Amendment to the Agreement. In addition, Plaintiff retained $679,448.89 that was owed to Defendant from the period after Defendant's breach. The Court found Plaintiff was entitled to $6,764,833.00, plus the additional $50,000.00, and less the $679,448.89 in retained funds, resulting in an award of $6,135,384.11 in damages. The Court further held that Plaintiff shall "recover pre-judgment interest at the statutory rate pursuant to Utah Code Ann. § 15-1-1 (West)." (*Id.* at 19).

Utah courts are "generally 'reluctant to award prejudgment interest for unrealized profits.'" *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 666 (Utah 2016) (alterations omitted). Though Plaintiff's witness and expert's calculations were found to be credible and reliable, "an award of prejudgment interest [would not be] appropriate here because [Pfarrer and Kaplan's] estimates were based on assumptions or speculation regarding what would have happened if the [breach] had not occurred." *ClearOne Commc'ns, Inc.*, 432 F. App'x at 774 ("[D]amages in lost profit cases do not represent an actual, ascertainable loss; they represent the fact-finder's best

approximation of that loss." (alterations omitted)); *USA Power, LLC*, 372 P.3d at 666. Indeed, as noted above, Pfarrer estimated the Purchase Volume in this case by relying on Defendant's past sales from 2018 until 2020. Though Defendant's actual growth in sale volume from 2018 to 2021 was 22%, Pfarrer relied on a conservative 10% growth rate estimate to calculate the projected volume of lost sales for the remaining term of the Agreement. Pfarrer then concluded that, based on the 10% projected growth figure, the Purchase Volume would amount to approximately $113,800,000.00 from 2021 through 2023. This estimated Purchase Volume was then utilized to determine Plaintiff's revenue and costs, to arrive at a final amount of $6,764,833.00 in damages for lost profits.[3] "'The very nature of lost future profits injects an air of uncertainty and speculation into the calculation of damages,' because a jury must speculate when it determines what profits would have been generated had the defendant not acted wrongfully." *ClearOne Commc'ns, Inc.*, 432 F. App'x at 774 (alterations omitted). "Damages in such cases do not represent an actual, ascertainable loss; they represent the factfinder's best approximation of that loss."[4] *Id.*

Although it is true that Pfarrer relied on real historical data of the Parties' long-term business relationship, this historical data was used to "provide merely an estimate or proxy for the number of sales" that Defendant would have had "if the [breach] had not occurred." *Id.* at 775. "There is a difference between a loss that can be 'measured by facts and figures,' and using facts and figures to estimate a loss. In this case, the lost profits calculation was based on a number of assumptions about what [Defendant's] future sales . . . would have been." *Id.* (citations and emphasis omitted); *see also BC Tech., Inc. v. Ensil Int'l Corp.*, No. 2:02-CV-700 TS, 2009 WL 81386, at *8 (D. Utah Jan. 9, 2009), *aff'd*, 464 F. App'x 689 (10th Cir. 2012) (applying Utah law

---

[3] This amount was subject to a reduction based on the funds retained by Plaintiff.
[4] That the trial in this case was a bench trial does not alter this analysis as the District Court stood as the factfinder in the instant matter. *See United States v. Brown*, 415 F.3d 1257, 1269–70 (11th Cir. 2005) ("Because this was a bench trial, the district court was not only the gatekeeper but also the factfinder.").

and denying plaintiff's request for prejudgment interest on lost profits in part because the plaintiff's expert witness "used speculative assumptions to extrapolate lost profits" from business data).

Plaintiff cites to *Encon Utah, LLC v. Fluor Ames Kraemer, LLC* in support of its position that prejudgment interest can be awarded on damages awards for lost profits. 210 P.3d 263 (Utah 2009). In *Encon*, the plaintiff was found entitled to prejudgment interest on a damage award of lost profits because the plaintiff "demonstrated that its damages were measurable by facts and figures." *Id.* at 275. In that case, plaintiff sought recovery of damages for the percentage of work it had completed on a fixed-price contract and for profits on that work at a rate of 10%. *Id.* at 274. The parties agreed that plaintiff completed 41.9% of the contract work and that 10% was a reasonable profit margin. *Id.* at 274 & n.31. The trial court determined the value of that work by multiplying the contract price by 41.9%. *Id.* Thus, the Court found that the plaintiff's profits were "known, calculable figures and are not similar to the speculative future profits." *Id.* at 274. Unlike the instant case, the plaintiff in *Encon* had "actually performed the work and incurred the lost profit damages." *ClearOne Commc'ns, Inc.*, 432 F. App'x at 775 (distinguishing *Encon*). In fact, the *Encon* court specifically distinguished its case from those in which plaintiffs "sought unrealized future lost profits." *Id.* (citing *Encon*, 210 P.3d at 273). Plaintiff, though incurring damages in the form of lost profits, did not actually perform the work. Rather, Plaintiff's losses were estimations of potential future profits.[5]

---

[5] Plaintiff further relies on *Smith v. Fairfax Realty, Inc.*, to assert that "an award of prejudgment interest is appropriate" when the court bases "its award of damages on competent testimony from an [expert] who used generally accepted principles in determining" the amount of the loss. *See* (ECF No. 200 at 10) (citing 82 P.3d 1064, 1070 (Utah 2023)). However, in *Smith*, the damages were in relation to the loss of plaintiffs' interest in a piece of real property. The court held that "[w]here, as here, damages were complete as of the day the property was transferred to the [real estate investment trust] and the jury based its award of damages on competent testimony from an appraiser who used generally accepted principles in determining the market value of the real property, an award of prejudgment interest is appropriate." *Id.* This case involving an estimation of Plaintiff's lost profits from a breach of contract is distinguishable from an evaluation of real property's market value.

9

Thus, "due to the amount of uncertainty inherent in [Plaintiff's] award for lost profits,"[6] the undersigned recommends that the Court deny Plaintiff's Motion for prejudgment interest on the damages awarded based on lost profits, but rather award Plaintiff prejudgment interest, without opposition from Defendant, on the loss of $50,000.00 Unamortized Second Amendment Extension Bonus, contained in Section 1.7 of the Second Amendment to the Agreement.

### III. RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 60(a) to Calculate Amount of Prejudgment Interest Award (ECF No. 197) be **GRANTED, in part**, and **DENIED, in part**. The undersigned further **RECOMMENDS** that Plaintiff be awarded $15,149.86 in prejudgment interest.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 6th day of June, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

---

[6] *See USA Power, LLC*, 372 P.3d at 667.